IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| Target Corporation, a Minnesota corporation,<br><br>Plaintiff,<br><br>v.<br><br>ACE American Insurance Company, a Pennsylvania corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Target Corporation ("Target"), for its Complaint against Defendant ACE American Insurance Company ("ACE"), states and alleges as follows:

**INTRODUCTION**

1. This is a civil action for breach of contract and declaratory relief. In July 2018, a fashion company called Universal Standard, Inc. ("USI") sued Target for trademark infringement. USI claimed that Target's use of the mark UNIVERSAL THREAD on clothing infringed on USI's rights in its UNIVERSAL STANDARD mark. Target defended the action and settled all of USI's claims before any of those claims had been adjudicated.

2. ACE insures Target for such defense costs and settlements under a privacy and network liability policy that provides coverage for losses arising out of alleged wrongful acts, defined to include trademark infringement, unfair competition, and

SF: 331263-2

misappropriation of advertising ideas. These are exactly the claims Target defended and settled here.

3. Target provided notice to ACE and has provided a detailed accounting of these losses. ACE acknowledged the potential for coverage and thus its duty to defend, though due to Target's self-insured retention, ACE was not called upon to pay anything until Target settled the underlying lawsuit.

4. Despite the clear existence of coverage, ACE denied Target's claim and has refused to pay it.

5. This action is necessary because ACE has denied coverage for Target's losses. Target seeks declaratory relief, compensatory damages, and other relief that may be available.

## PARTIES

6. Target is a corporation organized and existing under the laws of the state of Minnesota with its principal place of business in Minneapolis, Minnesota.

7. Upon information and belief, Defendant ACE American Insurance Company is a corporation organized and existing under the laws of the state of Pennsylvania with its principal place of business in Philadelphia, Pennsylvania, and is in the business of providing liability insurance.

## JURISDICTION AND VENUE

8. This Court has jurisdiction over the subject matter pursuant to 28 U.S.C. § 1332(a)(2), in that the action is between a citizen of Minnesota and a citizen of a foreign

state, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

9. This Court has jurisdiction over the person of ACE, in that at all times relevant, it has engaged in business activities within the state of Minnesota and has otherwise purposefully availed itself of this jurisdiction.

10. Venue is proper in the United States District Court for the District of Minnesota pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the transactions, acts, and/or omissions giving rise to the causes of action asserted herein occurred within the state of Minnesota.

11. An actual justiciable controversy between Target and ACE exists within the meaning of 28 U.S.C. § 2201 regarding whether ACE has a duty to indemnify Target with respect to the claim described below.

## PRIVACY AND NETWORK LIABILITY POLICY SOLD TO TARGET

12. ACE issued a privacy and network liability policy bearing policy number G21653937 012 to Target for the policy period November 1, 2017, to November 1, 2018 (the "Policy"). A true and correct copy of the Policy is attached as Exhibit A.

13. The Policy provides broad coverage for liability claims brought against Target relating to its media and advertising operations. The relevant insuring clause states:

> Solely with respect to the Insured's Media, the Insurer will pay Damages and Claims Expenses which the Insured becomes legally obligated to pay by reason of a Claim first made against the Insured during the Policy Period and reported to the Insurer pursuant to Section VII, Notice, for any Wrongful Acts taking place on or after the Retroactive Date and prior to the end of the Policy Period.

Ex. A at 22 of 76.

14.  With respect to that insuring clause, the Policy defines "Wrongful Act" to mean "a Media Injury but solely in the course of the Insured's Media or Media for Others activities." Ex. A at 24 of 76.

15.  As relevant here, the Policy defines "Media Injury" to mean:

> c.  plagiarism, piracy (excluding patent infringement), or the misappropriation or unauthorized use of advertising ideas, advertising material, titles, literary or artistic formats, styles or performances;
>
> d.  the infringement of copyright, domain name, trademark, trade name, trade dress, title or slogan, service mark, or service name; or
>
> e. unfair competition alleged in connection with a Claim alleging (a) through (d) directly above;
>
> . . . .
>
> i. violation of the Lanham Act 15 U.S.C.A. § 1051 et seq.

Ex. A at 23 of 76.

16.  The Policy defines "Damages" to mean:

> compensatory damages, any award of prejudgment or post-judgment interest, and settlements which the Insured becomes legally obligated to pay on account of any Claim first made against any Insured during the Policy Period or, if elected, the Extended Reporting Period, for Wrongful Acts to which this Policy applies.

Ex. A at 5 of 76. The Policy further provides that "Damages shall not include . . . disgorgement of any profit, remuneration or financial advantage to which any Insured was not legally entitled." *Id.*

4

17.     The Policy defines "Claims Expenses" to include "reasonable and necessary attorneys' fees, expert witness fees and other fees and costs incurred by the Insurer, or by the Insured with the Insurer's prior written consent, in the investigation and defense of a covered Claim." Ex. A at 5 of 76.

18.     The Policy defines "Insured's Media" to mean:

> the electronic publishing, dissemination, releasing, gathering, transmission, production, webcasting, or other distribution, by or on behalf of the Insured, of Content on the Insured's Website or on any other Website or mobile application or via non-electronic distribution with respect to non-electronic content. Insured's Media also means Media Services.

Ex. A at 23 of 76.

19.     The Policy defines "Media Services" to mean "Advertising, Broadcasting, and Publishing." Ex. A at 23 of 76.

20.     The Policy defines "Advertising" to mean:

> promotional material (including branding, co-branding, sponsorships and/or endorsements), publicly disseminated on behalf of the Named Insured.

Ex. A at 21 of 76.

21.     The Policy has a $15 million limit of liability for each claim and a total general aggregate limit of $15 million, subject to a $10 million self-insured retention for both "Damages" and "Claims Expenses." Ex. A at 2 & 13 of 76.

**UNDERLYING LAWSUIT**

22.     In July 2018, USI sued Target in the Southern District of New York in *Universal Standard, Inc. v. Target Corporation et al.*, No. 18-cv-06042 (the "USI Action").

5

USI is a women's clothing company that sells its products under the UNIVERSAL STANDARD name and mark.

23.  USI's complaint included claims for violation of the Lanham Act, including federal trademark infringement, false designation of origin, and unfair competition, as well as common law trademark infringement and unfair competition. USI alleged that Target's use of the UNIVERSAL THREAD name and mark on women's clothing infringed on USI's rights in its mark, and that Target had copied USI's brand concept and advertising ideas and strategies.

24.  USI sought permanent injunctive relief and monetary recovery, including actual damages, Lanham Act compensatory damages as measured by the amount of Target's profits, and "such other compensatory damages" the Court determined to be fair and appropriate.

25.  In November 2019, before any of USI's claims had been adjudicated, Target and USI settled the USI Action. USI dismissed its claims with prejudice.

26.  Target's total defense costs and other losses arising out of the USI Action exceed its self-insured retention under the Policy.

27.  Target has satisfied all policy conditions, and has made payments that have exhausted its self-insured retention.

## ACE'S WRONGFUL DENIAL OF COVERAGE

28.  On August 28, 2018, promptly after USI filed the USI Action, pursuant to and in accordance with the terms and conditions of the Policy, Target provided notice to

6

ACE of the USI Action and the claims USI had made against Target, including USI's claims for damages.

29. In the USI Action, USI sought compensatory damages for Target's alleged trademark infringement and unfair competition.

30. These claims are squarely within the scope of the Policy's coverage and are not otherwise excluded by any provision of the Policy.

31. ACE acknowledged that under the Policy, ACE had a duty to defend Target in the USI Action.

32. On July 25, 2019, ACE disclaimed coverage for any indemnity arising out of the USI Action.

33. Beginning in 2018, Target has communicated both orally and in writing with ACE, explaining in detail why Target's losses arising out of the USI Action are, in fact, covered under the terms of the Policy, and has requested that ACE withdraw its written denials of coverage and indemnify Target for its losses.

34. ACE has refused to acknowledge coverage for Target's losses arising out of the USI Action and has further disregarded its contractual obligation to indemnify Target for the extent of these losses falling within its aggregate coverage layer.

35. Because Target's covered losses are sufficient to exhaust Target's retained limit, and because ACE has refused to indemnify Target for such losses, this matter is ripe for adjudication.

## COUNT I
## DECLARATORY JUDGMENT

36. Target restates and realleges the facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

37. There is a genuine and bona fide dispute and an actual controversy and disagreement between Target and ACE regarding whether ACE has a duty to indemnify Target for Target's losses arising out of the USI Action.

38. Target has fully complied with all of the terms and conditions of the Policy relating to the USI Action.

39. ACE has improperly denied coverage for Target's losses arising out of the USI Action, which are covered under the Policy, and has improperly refused to indemnify Target for settlement payments these losses.

40. Pursuant to the Uniform Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2201, Target requests that the Court issue a judicial declaration that the Target's losses arising out of the USI Action are covered under the Policy, and that ACE was and is obligated to indemnify Target for the extent of these losses falling within ACE's aggregate coverage layer.

## COUNT II
## BREACH OF CONTRACT

41. Target restates and realleges the facts and allegations set forth in the foregoing paragraphs as if fully set forth herein.

42. Target has fully complied with all of the terms and conditions of the Primary Policy relating to the USI Action.

8

43. ACE has refused and continues to refuse to indemnify Target for losses arising out of the USI Action. ACE's refusal to indemnify Target with respect to such losses constitutes a breach of the Policy.

44. ACE's breach has proximately caused Target harm for which Target is entitled to damages exceeding $75,000.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Target respectfully prays for relief as follows:

1. That the Court declare that Target's losses arising out of the USI Action are covered under the Policy, and that ACE was and is obligated to indemnify Target for the extent of these losses that was incurred within the Policy's aggregate coverage layer;

2. That the Court declare that Target's losses arising out of the USI Action are covered under the Policy, and that these losses do properly exhaust Target's retained limit;

3. That the Court enter a judgment against ACE for the extent of Target's losses arising out of the USI Action that was incurred in ACE's aggregate coverage layer;

4. Prejudgment interest at the maximum legal rate;

5. Special and incidental damages resulting from ACE's breach of contract in an amount to be determined at trial;

6. Attorney's fees, costs, and disbursements incurred in obtaining the benefits due under the Policy;

7. Interest on such attorney's fees, costs, and disbursements; and

8. That the Court award such other relief as the Court may deem to be just, fair, and equitable under the circumstances of this case.

Dated: November 28, 2020

Respectfully submitted,

*/s/ John Lunseth*
John B. Lunseth II (#065341)
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone:  612-977-8400
Fax:  612-977-8650
Email:  jlunseth@taftlaw.com

Of counsel:

Gretchen Hoff Varner
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.:  (415) 591-6000
Fax:  (415) 591-6091

*Attorneys for Plaintiff*
*Target Corporation*

## JURY TRIAL DEMAND

Target Corporation hereby demands a jury trial on all issues so triable.

Dated: November 28, 2020             Respectfully submitted,

*/s/ John Lunseth*
John B. Lunseth II (#065341)
TAFT STETTINIUS & HOLLISTER LLP
2200 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Phone:  612-977-8400
Fax:  612-977-8650
Email:  jlunseth@taftlaw.com

Of counsel:

Gretchen Hoff Varner
COVINGTON & BURLING LLP
Salesforce Tower
415 Mission Street, Suite 5400
San Francisco, CA 94105-2533
Tel.:  (415) 591-6000
Fax:  (415) 591-6091

*Attorneys for Plaintiff*
*Target Corporation*