## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Target Corporation,                                    Case No. 20-cv-2400 (PJS/JFD)

                    Plaintiff,

v.                                                            **ORDER**

ACE American Insurance Company,

                    Defendant.

This is an insurance coverage dispute. ACE American Insurance Company ("ACE") issued to Target Corporation ("Target") a privacy and network liability policy providing coverage for claims related to Target's media and advertising operations. (Compl. ¶¶ 12–13, Dkt. No. 1.) In 2018, Universal Standard, Inc. ("USI") sued Target in the United States District Court for the Southern District of New York for trademark infringement ("the USI action"). (*Id.* ¶¶ 1, 22.) Target settled the case with USI, then sought coverage for its defense and settlement costs from ACE. (*Id.* ¶¶ 1, 3.) ACE denied coverage and refused to pay the claim. (*Id.* ¶ 4.) Target then filed this action against ACE, asserting claims for declaratory judgment and breach of contract. (*Id.* ¶¶ 36–44.)

This matter is now before the Court on ACE's Motion to Compel Discovery (Dkt. No. 34) and Target's Motion to Compel Discovery (Dkt. No. 39). The Court heard oral argument on the motions on November 30, 2021. Justin Levy, Alan Joaquin, and Alexandra Zabinski, Esqs., appeared for ACE. David Watnick, Gretchen Hoff Varner, Mira Vats-Fournier, Yurij Melnyk, and Alyssa Wu, Esqs., appeared for Target. For the reasons set

forth below, the Court denies ACE's Motion to Compel Discovery; and grants in part, denies in part, and denies without prejudice in part Target's Motion to Compel Discovery.

## I.    ACE's Motion to Compel Discovery

### A.    Relevant Facts

In the USI action, USI alleged that Target willfully infringed USI's Universal Standard Mark in advertising and selling Target's Universal Thread clothing line. (*See* Def.'s Mem. Supp. Mot. Compel at 2, Dkt. No. 35.)[1] When the USI action settled, USI had identified two types of damages: disgorgement of Target's profits and a reasonable royalty. *Id.* According to ACE, the insurance policy issued to Target does not provide coverage for disgorged profits or a reasonable royalty. (Def.'s Mem. Supp. Mot. Compel at 3.) ACE anticipates (and Target does not deny) that Target will argue in this case that a portion of the USI settlement can be allocated to covered losses, in other words, to damages other than disgorged profits and a reasonable royalty. (*Id.* at 9.)

Before the USI action settled, Target and ACE entered into a Common Interest and Confidentiality Agreement ("Common Interest Agreement") so that Target could provide privileged information to ACE in connection with Target's coverage claim. (*See* Joaquin Decl. Ex. A, Dkt. No. 36-1.) The Common Interest Agreement provides that it is governed by New York law. (*Id.* at 3.) Paragraph 12 of the Common Interest Agreement provides: "In the event of any dispute between and among [Target and ACE] relating to any Claim

---

[1] ACE cited to the USI litigation documents in its memorandum but did not provide them to the Court, so the Court cites to ACE's memorandum rather than the actual court filings.

or the Policy, nothing in this Agreement shall preclude the Parties from producing Confidential Information to any court, arbitrator, or mediator subject to the confidentiality restrictions in this Agreement, including but not limited to seeking a protective order and/or leave to file Confidential Information under seal." (*Id.* at 4.) Pursuant to the Common Interest Agreement, Target produced documents related to USI's damages such as mediation statements from Target and USI, a liability and damages evaluation from Target's counsel, and USI's post-mediation demand to ACE. (Joaquin Decl. ¶¶ 6–7.) According to ACE's counsel at the hearing, Target also produced a copy of the settlement agreement, copies of all written settlement demands, and the settlement amount.

Before the mediation in the USI action, ACE, Target, and USI signed a Mediation Agreement[2] that contained the following confidentiality provision:

> In order to promote communication among the parties, counsel and the mediator and to facilitate settlement of the dispute, each of the undersigned agrees that the entire mediation process is confidential. All statements made during the course of the mediation are privileged settlement discussions, and are made without prejudice to any party's legal position, and are inadmissible for any purpose in any legal proceeding. These offers, promises, conduct and statements (a) will not be disclosed to third parties except persons associated with the participants in the process, and (b) are privileged and inadmissible for any purposes, including impeachment, under Rule 408 of the Federal Rules of Evidence and any applicable federal or state statute, rule or common law provisions.

(Hoff Varner Decl. ¶ 20, Dkt. No. 51.)

---

[2] ACE did not address the Mediation Agreement in its filings. At the hearing, ACE represented that it had not yet confirmed that it signed the Agreement, due to the individualized process for obtaining electronic signatures. ACE also said, however, that the Court should proceed on the assumption that ACE had signed the Agreement.

B.      **The Discovery at Issue and ACE's Motion to Compel**

ACE seeks to compel Target to supplement its responses to ACE's Requests for Production of Documents ("RFPs") 1–14. These RFPs ask Target to produce documents from the USI action such as deposition materials, expert reports, written discovery, damages quantifications and evaluations, settlement demands from USI, Target's evaluations of settlement, settlement communications between Target and the mediator, coverage-related communications between Target and USI, and settlement communications between USI and Target. (Joaquin Decl. Ex. G at 5–21, Dkt. No. 36.) ACE served the RFPs after Target's counsel indicated during a conference call that the documents ACE used to draft a proposed joint statement of undisputed facts "d[id] not tell the whole story" about the damages settled in the USI action. (Joaquin Decl. ¶ 20, Dkt. No. 36.) ACE hopes to learn from documents produced in response to the RFPs how USI identified and quantified its alleged damages and how Target evaluated USI's claimed damages and settlement amounts. (Def.'s Mem. Supp. Mot. Compel at 5.)

Target objected to the RFPs on numerous bases, including that the documents were protected by Minnesota General Rule of Practice 114.08.[3] (Joaquin Decl. Ex. G at 5–21,

---

[3] Minnesota General Rule of Practice 114.08 provides in relevant part:

(a) Evidence. Without the consent of all parties and an order of the court, or except as provided in Rule 114.09(e)(4), no evidence that there has been an ADR proceeding or any fact concerning the proceeding *may be admitted* in a trial de novo or in any subsequent proceeding involving any of the issues or parties to the proceeding.

(b) Inadmissibility. Subject to Minn. Stat. § 595.02 and except as provided in paragraphs (a) and (d), no statements made nor documents produced in

Dkt. No. 36-1.) Target withheld six documents on the basis of Rule 114.08, the work-product doctrine, and/or the attorney-client privilege. (Joaquin Decl. Ex. H at 1.) Target also withheld or redacted 48 other documents on those bases, according to its privilege log. (Def.'s Mem. Supp. Mot. Compel at 7; Joaquin Decl. Ex. H at 1–2.)

ACE argues the documents withheld on the basis of Rule 114.08 are not privileged because Minnesota General Rule of Practice 114.08 does not apply in federal court; under Minnesota's conflict-of-law rules, New York law would govern any mediation privilege; and New York does not recognize a blanket mediation privilege. (Def.'s Mem. Supp. Mot. Compel at 1, Dkt No. 35.) ACE further argues that Target waived any privilege by previously providing confidential information to ACE pursuant to the Common Interest Agreement. (*Id.* at 2.)

Target responds that it is withholding only protected and privileged materials that reflect Target's subjective evaluation of the USI action and settlement, and that it has produced documents such as Target's and USI's mediation statements and settlement demands. (Pl.'s Mem. Opp'n Mot. Compel at 1, Dkt No. 50.) Target asserts it will not use any privileged or protected information or testimony to prove its claims, but will offer only objective evidence that was known to it when it settled with USI. (*Id.*; Hoff Varner Decl. ¶ 5.) According to Target, its objective, nonprivileged evidence will consist of documents and testimony from Amanda Lagatta, a non-attorney risk manager at Target; Brendan

---

non-binding ADR processes which are not otherwise discoverable shall be subject to discovery or other disclosure. Such evidence is inadmissible for any purpose at the trial, including impeachment.

O'Rourke, one of Target's outside counsel in the USI action; and James Steffen, another of Target's outside counsel in the USI action. (*Id.* ¶ 7.) If ACE asks any of these witnesses about Target's subjective valuation of the USI action or the settlement, Target asserts that it will object and instruct them not to answer. (*Id.* ¶ 8.) Target further states that its experts will consider only objective evidence. (*Id.* ¶ 9.)

### C.    Relevance

Federal Rule of Civil Procedure 26(b)(1) governs the scope and limits of discovery: "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . . Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "Relevance is construed broadly at the discovery stage." *Heilman v. Waldron*, 287 F.R.D. 467, 473 (D. Minn. 2012).

ACE argues the withheld documents are relevant to whether the settlement between Target and USI included damages other than disgorged profits and a reasonable royalty. (Def.'s Mem. Supp. Mot. Compel at 9.) ACE believes that Target will argue that a portion of the USI settlement can be allocated to a covered loss, and cites *UnitedHealth Group Inc. v. Columbia Casualty Co.*, 47 F. Supp. 3d 863 (D. Minn. 2014), for the proposition that the disputed documents are relevant. (Def.'s Mem. Supp. Mot. Compel at 9.) Target does not deny that it will seek an allocation of the settlement and also cites *UnitedHealth*, but mainly for the proposition that it has not waived privilege or work product protection. (Pl.'s Mem. Opp'n at 3–6.) The Court will address the relevance argument in this section and the waiver argument in Part I.E.3 *infra*.

6

In *UnitedHealth*, the Honorable Patrick J. Schiltz observed that "allocation is an objective inquiry." 47 F. Supp. 3d at 872. The ultimate question is how a reasonable person in Target's position would have allocated the covered and uncovered losses at the time of the settlement, given the information known to it. *See id.* An insured such as Target may use several types of evidence to meet its burden. First, the insured "may offer testimony or other evidence of how the insured itself (or its attorneys) evaluated the claims at the time of settlement." *Id.* at 874. Such evidence may include, for example, "attorneys' testimony about settlement negotiations and internal risk-assessment memoranda prepared during negotiations." *Id.* (citation omitted). Although this evidence is subjective, it is relevant. *Id.* Second, the insured could offer "evidence of the information that was known to the insured at the time of settlement—such as court rulings, deposition testimony, or the insured's personal knowledge of the underlying facts." *Id.* Third, an insured may rely on "expert testimony about how the settlement should be allocated . . .in light of what was known to the insured at the time of settlement." *Id.*

The Court finds that the withheld documents are relevant to the claims and defenses in this action, and specifically to the question of allocation. Target describes the documents as reflective of its subjective evaluation of the USI action and settlement, and under *UnitedHealth*, that evidence is relevant to how the settlement should be allocated.

To the extent Target argues that the scope of relevance should be defined by the type of evidence it intends to use to prove allocation, that is not the standard set forth in Rule 26(b)(1). The scope of relevance is defined by the claims and defenses in a case, and Target's coverage claim will require an allocation of the settlement between covered and

uncovered losses. Further, although Target has represented that it will not use subjective evidence to prove allocation, there is no stipulation binding Target to that position. Finally, Target has cited no authority suggesting that the type of evidence Target chooses to use should limit ACE to the same type of evidence in refuting Target's proof or proving an applicable defense.

> **D.    Bases for Protection or Nondisclosure: Attorney-Client Privilege, Work-Product Doctrine, Minnesota General Rule of Practice 114.08, and the Mediation Agreement**

> **1.    The Attorney-Client Privilege**

When subject matter jurisdiction is founded on diversity of citizenship, as here, state law governs attorney-client privilege issues. *See* Fed. R. Evid. 501; *Simon v. G.D. Searle & Co.*, 816 F.2d 397, 402 (8th Cir. 1987). The Minnesota Supreme Court has defined the attorney-client privilege as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Kobluk v. Univ. of Minn.*, 574 N.W.2d 436, 440 (Minn. 1998) (quoting 8 John Henry Wigmore, *Evidence* § 2292, at 554 (McNaughton rev. 1961)).

The parties do not discuss why each document at issue is, or is not, covered by the attorney-client privilege. Rather, they apply the term "privilege" generally and broadly to the withheld documents collectively. Nor did the parties submit the disputed documents to the Court so that the Court could assess the applicability of the privilege for itself. The Court's discussion, therefore, is necessarily also general and broad. It must suffice to say

8

that to the extent any of the withheld documents are confidential communications between Target and its attorneys that were made for the purpose of obtaining legal advice, they fall under the attorney-client privilege.

### 2.     The Work-Product Doctrine

The work-product doctrine protects from discovery a party's "documents and tangible things that are prepared in anticipation of litigation by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A). "There are two kinds of work product— ordinary work product and opinion work product." *Baker v. Gen. Motors Corp.*, 209 F.3d 1051, 1054 (8th Cir. 2000). "Ordinary work product includes raw factual information," *id.*, and is discoverable only if the materials "are otherwise discoverable under Rule 26(b)(1)" and the requesting "party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means," Fed. R. Civ. P. 26(b)(3)(A)(i)–(ii). "Opinion work product includes counsel's mental impressions, conclusions, opinions or legal theories" and is rarely discoverable. *Baker*, 209 F.3d at 1054. The party claiming work-product protection has the burden to establish the protection, and the party seeking the material has the burden to establish need and burden. *Regents of the Univ. of Minn. v. United States*, No. 17-CV-3690 (DSD/ECW), 2021 WL 5042491, at *9 (D. Minn. Oct. 29, 2021) (citing *Baker*, 209 F.3d at 1054; *In re Grand Jury Subpoena Duces Tecum*, 112 F.3d 910, 925 (8th Cir. 1997)).

As with the privileged documents, the parties do not discuss why any particular document is, or is not, covered by the work-product doctrine. The Court can only conclude

broadly that to the extent any of the withheld documents are ordinary or opinion work product, they are protected from disclosure, unless ACE can establish a basis for disclosure.

### 3. Minnesota General Rule of Practice 114.08 and the Mediation Agreement

Target has asserted Minnesota General Rule of Practice 114.08 as the basis for withholding six documents. Rule 114.08 assures confidentiality and nondiscoverability for statements made and documents produced in non-binding mediation. As the Court understands the parties' arguments, the confidentiality provision arguably pertains to Target's confidential communications with the mediator in the USI action, including draft and final mediation letters and other communications regarding the mediation. The parties disagree about the applicability of Rule 114.08 to the documents. The Court need not resolve that dispute, however, because the Court finds that Target's communications with the mediator are covered by the parties' Mediation Agreement.

Target and ACE agreed in the Mediation Agreement that "the entire mediation process is confidential" and that all "offers, promises, conduct, and statements . . . are privileged . . . ." (Hoff Varner Decl. ¶ 20.) Confidentiality provisions in mediation agreements are valid under New York law. *Lynbrook Glass & Architectural Metals, Corp. v. Elite Assocs., Inc.*, 656 N.Y.S.2d 291, 291 (N.Y. App. Div. 1997); *Crow-Crimmins-Wolff & Munier v. Westchester Cnty.*, 511 N.Y.S.2d 117, 118–19 (N.Y. App. Div. 1987). Target's confidential communications to the mediator were protected by the Mediation Agreement.

ACE argued at the motion hearing that the Mediation Agreement did not override the Common Interest Agreement. The Court does not disagree, but it is a moot point. The

Common Interest Agreement does not apply to the documents that Target is withholding pursuant to the Mediation Agreement. By its terms, the Common Interest Agreement applies to the confidential documents that Target produced to ACE in connection with Target's coverage claim, not to the confidential communications Target produced to the mediator. The Common Interest Agreement does not require Target to disclose the confidential mediation documents at issue to ACE. Paragraph 12 of the Common Interest Agreement, which governs the production of confidential information to a mediator, merely provides that in the event of a coverage dispute between Target and ACE, the parties are not precluded from providing confidential information to a mediator subject to the confidentiality restrictions in the Agreement. (Joaquin Decl. Ex. A at 4.) The provision does not require Target to produce mediation-related confidential communications to ACE.

### E.  Bases for Waiver or Disclosure: Common Interest Agreement, Subject Matter Waiver, At-Issue Waiver, and Substantial Need

#### 1.  Waiver under the Common Interest Agreement

ACE argues that Target has waived any mediation or attorney-client privilege under the Common Interest Agreement. (Def.'s Mem. Supp. Mot. Compel at 16.) A limited waiver may apply to the documents Target produced to ACE pursuant to the Common Interest Agreement, such as the mediation statements and the damages evaluation, but the Common Interest Agreement contains no waiver provision that would apply to the documents that Target is withholding as privileged or protected work product.

11

## 2.   Subject Matter Waiver under Federal Rule of Evidence 502(a)

ACE argues that Target's disclosure of some privileged information before, during, or after the mediation, and Target's agreement to disclose confidential information to ACE in the Common Interest Agreement, resulted in a subject matter waiver of the attorney-client privilege. ACE relies on Federal Rule of Evidence 502(a), which provides:

> When the disclosure [of information covered by the attorney-client privilege or work product protection] is made in a federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if:
>
> (1) the waiver is intentional;
>
> (2) the disclosed and undisclosed communications or information concern the same subject matter; and
>
> (3) they ought in fairness to be considered together.

Fed. R. Evid. 502(a).

ACE's argument does not account for the Mediation Agreement, which provided that the entire mediation process was confidential and that all communications were privileged. ACE's case authority, *e.g., Kobluk v. University of Minnesota*, 574 N.W.2d 436 (Minn. 1998), is inapplicable for the same reason: there was no confidentiality agreement between the parties. Thus, the Court finds that Target's disclosure of confidential information during the mediation did not result in a subject matter waiver of all undisclosed documents relating to USI's damages.

### 3.     At-Issue Waiver

ACE argues that Target waived any privilege because Target has placed at issue its privileged knowledge regarding USI's damages. ACE relies on a comment by one of Target's attorneys that a proposed statement of undisputed facts drafted by ACE "did not tell the whole story" of USI's damages. (Def.'s Mem. Supp. Mot. Compel at 5 (citing Joaquin Decl. ¶ 20).) ACE interpreted this statement to mean that confidential documents withheld by Target would flesh out the story. (*Id.* at 18.) At the motion hearing, Target's attorney who made that statement explained that she had not yet obtained or reviewed any of ACE's documents and that she wanted to learn more about ACE's side of the story. In addition, this attorney knew of oral communications about the settlement and settlement amount, and had those documents in mind. The Court accepts counsel's explanation and does not view the "whole story" comment to mean that Target was withholding documents.

ACE also believes Target may attempt to prove an allocation of covered loss through the testimony of "three attorney-witness 'storytellers,'" who may rely on privileged information in preparing for their depositions or offer evidence of privileged communications. (*Id.*) Target denies that its witnesses will rely on or offer any privileged information and represents "they will testify only as to objective, factual information known to Target at the time of the settlement," consistent with the second category of evidence described in *UnitedHealth*. (Pl.'s Mem. Opp'n Mot. Compel at 8–9.)

At the hearing, ACE argued that *UnitedHealth* will preclude Target from offering objective, nonprivileged testimony from its attorneys to prove allocation with the second type of evidence. ACE seems to presume that evidence elicited from an attorney must be

the second type of evidence discussed in *United Health*. The Court does not agree. As Target explained at the hearing, the distinction is not between attorney testimony and non-attorney testimony, but between subjective testimony of how a party and its counsel evaluated the settlement and objective testimony about information known to the insured at the time of settlement. The Court does not read *UnitedHealth* to support a waiver of the attorney-client privilege or work-product protection when an attorney offers objective, nonprivileged testimony about what the insured knew at the time of settlement.

Therefore, though instructive, *UnitedHealth* is not applicable to the motion at hand for at least two reasons. First, *UnitedHealth* was decided on motions for summary judgment, not a motion to compel. The issue in *UnitedHealth* was whether United had sufficient evidence from which a jury could allocate a settlement. The issues of privilege and waiver were secondary, and the *UnitedHealth* court made no determinations on those issues that would be binding on the discovery dispute now before this Court. Second, the scope and substance of Target's attorney-witness testimony is unknown. The witnesses have not yet testified. Thus, neither the Court nor the parties know whether and to what extent privileged information may be placed at issue through that testimony.

*Baker* provides helpful guidance on the question of at-issue waiver. "A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication at issue." *Baker*, 209 F.3d at 1055. Target has not done so here. Although the withheld privileged communications may concern the same subject matter as the issues in this case (*i.e.*, allocation, covered losses, the type of damages that were contemplated by the settlement), that is distinct from Target placing the *contents of the*

14

*privileged communications themselves* at issue. Otherwise, any attorney-client privileged communication that discussed a legal matter could be subject to the at-issue waiver.

The two common situations of at-issue waiver described in *Baker* are consistent with a finding that Target has not placed privileged communications at issue. The first situation "is when proof of a party's legal contention implicates evidence encompassed in the contents of an attorney-client communication—for example, when a client uses reliance on legal advice as a defense or when a client brings a legal malpractice action." *Id.* The second situation "is when a client's testimony refers to a specific privileged document." Neither of these situations is present in this case at this time. Consequently, ACE has not shown that Target has placed at issue privileged communications regarding USI's damages.

### 4.    Substantial Need

To the extent the attorney work product of Target's counsel contains factual information regarding USI's alleged damages or Target's negotiations with USI, ACE argues it is ordinary work product for which ACE has a substantial need. (Def.'s Mem. Supp. Mot. Compel at 18.) ACE contends the information is vital to defend against Target's statements that the "documents do not tell the whole story." (*Id.* at 19.) The Court has accepted Target's explanation of that statement in Part I.E.3 *supra* and finds that the comment does not establish a substantial need for any ordinary work product contained in the withheld documents. ACE has not otherwise established a substantial need for any document withheld on the basis of the work-product doctrine.

### F.    Conclusion

The documents withheld by Target are privileged, protected from disclosure by the Mediation Agreement, or protected by the work-product doctrine. ACE has not established a basis for the waiver of any privilege or shown substantial need for any ordinary work product. Accordingly, ACE's motion to compel is denied.

## II.    Target Corporation's Motion to Compel Discovery

Target asks the Court to compel ACE to supplement its discovery responses in three ways: (1) remove "non-responsive" redactions from otherwise responsive documents produced to Target; (2) respond to discovery requests pertaining to, or designate a Rule 30(b)(6) witness to testify to, communications between ACE and its reinsurer(s) regarding Target's coverage claim; and (3) designate a Rule 30(b)(6) witness to testify about ACE's document collection efforts. (Pl.'s Mem. Supp. Mot. Compel at 2, Dkt. No. 40.)

### A.    Redactions for Non-Responsiveness

ACE redacted as "non-responsive" portions of documents produced in response to Target's RFPs. ACE described the redactions on its Amended Privilege and Redaction Log as "[n]on-responsive information regarding reserves, reinsurance, and coverage under policies not at issue in this lawsuit." (*E.g.*, Hoff Varner Decl. Ex. C at 1, Dkt. No. 42-3.) In response to the motion to compel, ACE argues that loss reserves and reinsurance are irrelevant and "likely privileged." (Def.'s Mem. Opp'n Mot. Compel at 4–5, Dkt. No. 48.)

"Redaction is an inappropriate tool for excluding alleged irrelevant information from documents that are otherwise responsive to a discovery request." *Bartholomew v. Avalon Cap. Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011). The same is true for

redactions for non-responsiveness. *Burris v. Versa Prods., Inc.*, No. 07-cv-3938 (JRT/JJK), 2013 WL 608742, at *3 (D. Minn. Feb. 19, 2013) ("The practice of redacting for nonresponsiveness or irrelevance finds no explicit support in the Federal Rules of Civil Procedure, and the only bases for prohibiting a party from seeing a portion of a document in the Rules are claims of privilege or work-product protection.").

A party may redact case-specific reserve information if it can show that such information is privileged. *See Catholic Mut. Relief Soc'y of Am. v. Arrowood Indem. Co.*, No. 17-CV-3141 (JRT/LIB), 2019 WL 4897159, at *5 (D. Minn. Jan. 9, 2019). Aggregate reserve information, on the other hand, is likely not privileged. *See Simon v. G.D. Searle & Co.*, 816 F.2d 397, 403 (8th Cir. 1987); *Burke v. Ability Ins. Co.*, 291 F.R.D. 343, 349 (D.S.D. 2013) ("Evidence pertaining to aggregate reserve information, however, is discoverable and generally not protected by the work product doctrine or the attorney-client privilege.") (citing *Simon*, 816 F.2d at 402–03). Reinsurance information may be redacted if the disclosing party establishes the information is covered by the attorney-client privilege or work-product doctrine. *See Progressive Cas. Ins. Co. v. F.D.I.C.*, 302 F.R.D. 497, 501–03 (N.D. Iowa) (ultimately finding the reinsurance information was not properly redacted), *aff'd*, 49 F. Supp. 3d 545 (N.D. Iowa 2014).

To the extent ACE redacted reserve or reinsurance information as irrelevant or non-responsive, those redactions were not appropriate, and ACE must produce the missing information. To the extent ACE redacted reserve or reinsurance information as privileged or protected work product, the privilege log is inadequate to determine whether the redactions were proper.

A privilege log must "expressly make the claim" that the withheld information is "privileged or subject to protection as trial-preparation material." Fed. R. Civ. P. 26(b)(5)(A)(i). In addition, the privilege log must "describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). "To the extent possible, without disclosing the contents of each document, [the withholding party] must provide all factual information that [it] relies upon to support its claim of privilege or protection as to each document." *Twin City Fire Ins. Co. v. Canons Regular of Ord. of the Holy Cross*, No. 15-cv-4437 (ADM/BRT), 2017 WL 8315884, at *4 (D. Minn. Apr. 11, 2017). The withholding party should also provide supporting declarations in support of the factual information. *Id.*

The privilege log provided by ACE does not provide enough information for the Court or Target to assess attorney-client privilege or work-product protection. Therefore, ACE must produce an amended privilege log to Target within fourteen days of this Order. The parties must meet-and-confer about the privilege log seven days after it is produced, and if any disputes remain, the parties may proceed by further motion practice.

## B.   Discovery Regarding Reinsurance Communications

Target seeks documents and Rule 30(b)(6) testimony about ACE's communications with its reinsurer(s) regarding Target's coverage claim.

The Court denies the motion as to the written discovery because the RFPs propounded by Target did not ask for reinsurance communications or information. RFP No. 1 sought "documents relating to the policy," and RFP No. 2 sought "all documents

constituting or concerning communications relating to the policy, including without limitation communications with brokers, insurer, and Target." (Hoff Varner Decl. Ex. A at 2–3, Dkt. No. 42-1.) These RFPs do not describe the requested reinsurance discovery with "reasonable particularity." *See* Fed. R. Civ. P. 34(b)(1)(A).

Target represented at the hearing that the issue has ripened between the parties such that ACE should understand what Target is seeking. Even assuming that is true, without the parameters of a specific discovery request or a record of how the dispute ripened through meet-and-confers, the Court does not understand exactly what it is being asked to compel. The Court is not inclined to broadly compel "reinsurance discovery," as requested in Target's proposed order.

Furthermore, oral argument revealed that ACE may not fully understand exactly what reinsurance discovery Target is seeking, because the parties did not adequately meet and confer on the dispute. Target represented at the hearing that ACE did not identify the lack of a formal RFP as a problem during the meet-and-confer process, and ACE represented at the hearing that Target never took the position that it had requested reinsurance information in RFPs Nos. 1 and 2 until it filed the motion to compel. The Court will deny without prejudice this aspect of Target's motion so that Target can propound a proper RFP to which ACE can respond, and the parties can meet and confer over any disputes before bringing the issue back to the Court, if warranted.

Turning to Target's Notice of Intent to Depose ACE, Topic 23 sought testimony on "all communications relating to any reinsurance for or potentially applicable to the insurance claim." (Hoff Varner Decl. Ex. B at 15, Dkt. No. 42-2.) ACE objected to the

topic because it was "essentially a document request," exceeded the scope of permissible discovery, was disproportionate to the needs of the case, and was burdensome. (*Id.*) The Court agrees that the Topic 23 is overly broad; it does not "describe with reasonable particularity the matters for examination." *See* Fed. R. Civ. P. 30(b)(6). Therefore, the Court will not compel ACE to produce a deponent to testify on Topic 23, but Target may choose to propound an RFP seeking the communications.

### C.   Rule 30(b)(6) Witness Testimony Regarding ACE's Document Collection Efforts

Finally, Target moves to compel ACE to produce a Rule 30(b)(6) deponent to testify about its document collection efforts. ACE responds that providing testimony on document collection would be disproportionate to the needs of the case and would potentially intrude on the attorney-client privilege or work-product doctrine.

To the extent Target asks questions that would elicit privileged communications or protected work product, ACE can instruct the witness not to answer. As to proportionality, neither party provided the Court with applicable case authority. In Target's only case, *Tiki Shark Art Inc. v. CafePress Inc.*, No. 13-cv-00577 JMS-RLP, 2014 WL 12603135 (D. Haw. June 30, 2014), the court permitted opposing counsel to question a deponent about his personal efforts (not a corporation's efforts) to search for and produce documents. *Id.* at *3 ("Defendant's counsel may question Mr. Hassan regarding his efforts to search for and produce documents during his deposition."). And none of ACE's cases—*Johnson v. Charps Welding & Fabricating, Inc.*, No. 14-cv-2081 (RHK/LIB), 2016 WL 11268315 (D. Minn. Apr. 19, 2016); *Bombardier Recreational Products, Inc. v. Arctic Cat, Inc.*, No. 12-

cv-2706 (MJD/LIB), 2014 WL 10714011 (D. Minn. Dec. 5, 2014); or *Insignia Systems, Inc. v. News Corp.*, No. 19-cv-1820 (MJD/BRT), 2020 WL 3046539 (D. Minn. June 8, 2020)—denied Rule 30(b)(6) testimony on document collection efforts on proportionality grounds. As the party resisting discovery, ACE has the burden to establish disproportionality, *see Beseke v. Equifax Information Services, LLC*, No. 17-cv-4971 (DWF/KMM), 2018 WL 6040016, at *4 (D. Minn. Oct. 18, 2018), and it has not done so. This aspect of Target's motion is therefore granted.

Accordingly, based on all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. ACE American Insurance Company's Motion to Compel Discovery (Dkt. No. 34) is **DENIED**; and

2. Target Corporation's Motion to Compel Discovery (Dkt. No. 39) is **GRANTED in part**, **DENIED in part**, and **DENIED WITHOUT PREJUDICE in part**, as set forth fully herein.

Date: December 22, 2021              *s/ John F. Docherty*
                                     JOHN F. DOCHERTY
                                     United States Magistrate Judge